IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DISTRICT

| | |
|---|---|
| JEFFERY L. SIMONS and<br>AUDREY SIMONS | PLAINTIFFS |
| versus | No. 1:09-cv-172HSO-RHW |
| STATE FARM FIRE & CASUALTY COMPANY,<br>SILBEY GROUP, LTD.,<br>WILLIAM V GWIN, ROBERT J. ILLO,<br>PILOT CATASTROPHE SERVICES, INC. and<br>JOHN DOES 1-10 | DEFENDANTS |

**PLAINTIFFS' SUPPLEMENTAL COMPLAINT
AND JOINDER OF ADDITIONAL PARTIES**

COMES NOW the Plaintiffs JEFFERY L. SIMONS and AUDREY SIMONS and files this their Supplemental Complaint against the Defendant STATE FARM FIRE AND CASUALTY COMPANY and those additional Defendants named herein, in support of those facts and matters alleged herein, the Plaintiffs would show as follows:

1. The Plaintiffs reallege and incorporate by reference all facts, matters and claims contained in their Second Amended Complaint filed of record in this Cause on September 1, 2009.

2. The Plaintiffs names the following entities and individuals as additional Defendants in this Cause:

   a. SILBEY GROUP, LTD, a foreign business enterprise doing business in the State of Mississippi, and it may be served with process in the manner prescribed by law;

  b. WILLIAM V. GWIN, who is believed to be a resident citizen of the State of Alabama, is a professional engineer doing business in the State of Mississippi, and he may be served with process in the manner prescribed by law;

  c. ROBERT J. ILLO, who is a person of unknown citizenship, and he may be served with process in the manner prescribed by law;

  d. PILOT CATASTROPHE SERVICES, INC., a corporation organized and existing under the laws of the State of Alabama, and it may be served with process in the manner prescribed by law; and

  e. JOHN DOES 1-10 are persons or entities that were affiliated with the Defendants, or who acted in concert with the Defendants, and whose identities are currently unknown, including *inter alia* engineering companies, adjusting companies, contractors, and any individual employee, supervisor, executive or adjuster who exceeded the scope of their authority and engaged in wrongful or tortuous conduct that furthered or resulted in the claims or damages alleged in this Cause. Said John Does, once their identities are known, will be identified and joined as defendants in this Cause pursuant to the Federal Rules of Civil Procedure.

  3. This Court has jurisdiction over both the Parties and the matters at controversy herein.

  4. During all times relevant to this litigation, the Plaintiffs maintained insurance coverage with the Defendant STATE FARM FIRE AND CASUALTY COMPANY on the following rental properties in Jackson County, Mississippi, to-

wit, three (3) townhouse residences and all appurtenances thereto, being Units B2-1, B2-2 and B2-4, situated at 15300 Dismuke Avenue, Biloxi, MS 39532, and insured through Policy Number 99-CE-5131 issued by the Defendant.

     5.     Additionally, the Plaintiffs maintained flood insurance coverage on the three (3) townhouses referenced herein at Paragraph 4, with the flood insurance coverages being referenced in Policies 24-RC-2339-5, 24-RC-2340-7 and 24-RC-2341-9 issued by the Defendant.

     6.     On August 29, 2005, as a direct and proximate result of Hurricane Katrina, all three (3) of the Plaintiffs' insured properties suffered wind and hurricane related damages that were compensable under Policy Numbers 99-CR-5108 and 99-CE-5131.

     7.     Additionally, these three (3) townhouses referenced herein at Paragraph 4 sustained additional flood damage, which was compensable under the flood insurance coverage referenced in Policies 24-RC-2339-5, 24-RC-2340-7 and 24-RC-2341-9 issued by the Defendant.

     8.     The Plaintiffs did provide the Defendant STATE FARM FIRE AND CASUALTY COMPANY with timely notice of his losses and claims, with the Defendant assigning Claim Number 24-Z446-058 being assigned to the claim for damages sustained to the three (3) townhouses located at 15300 Dismukes Avenue.

     9.     Subsequent to the inspection and adjustment of the Plaintiffs' losses sustained to the foregoing properties, the Defendant STATE FARM FIRE

AND CASUALTY COMPANY advised the Plaintiffs during early October 2005 that flood damage to the there (3) townhouses was compensable under the flood insurance coverage provided in Policies 24-RC-2339-5, 24-RC-2340-7 and 24-RC-2341-9, however, the Defendant STATE FARM FIRE AND CASUALTY COMPANY refused to fully compensate the Plaintiffs for their claims of wind damage to either the three (3) townhouses, and that the refusal of the Defendant STATE FARM FIRE AND CASUALTY COMPANY to pay the Plaintiffs for these compensable damages constituted a breach of the insurance contract by the Defendant STATE FARM FIRE AND CASUALTY COMPANY.

10.   Further, the Plaintiffs assert that the Defendant STATE FARM FIRE AND CASUALTY COMPANY refused to compensate them for all loss of rent claims covered by all of the aforesaid policies, to-wit, Policies 24-RC-2339-5, 24-RC-2340-7, 24-RC-2341-9, 99-CR-5108 or 99-CE-5131, and that refusal of the Defendant STATE FARM FIRE AND CASUALTY COMPANY to pay the Plaintiffs for these compensable damages constituted a breach of the insurance contract by the Defendant STATE FARM FIRE AND CASUALTY COMPANY.

11.   As referenced in Paragraphs 4 and 5 herein, the Defendant STATE FARM FIRE AND CASUALTY COMPANY underwrote both flood and wind insurance coverage on the Plaintiffs' three (3) condominium units situated on Biloxi Bay in Jackson County, Mississippi. The subject policies underwritten by the Defendant STATE FARM FIRE AND CASUALTY COMPANY were "all risk"

coverage for all accidental direct physical losses to the covered properties, unless the risk was excluded under the terms of the contract.

12. Under the federal flood insurance program, the Defendant STATE FARM FIRE AND CASUALTY COMPANY does not pay compensation for insured losses under the flood insurance policy it sells, but rather the federal government is the funding source for the those losses sustained by insureds under the flood insurance policy.

13. When there is a claim under the Standard Flood Insurance Policy, the underwriter (in this case, the Defendant STATE FARM FIRE AND CASUALTY COMPANY) adjusts the claim in accordance with federal regulations.

14. In acting as the federal government's agent in the adjustment of the Plaintiffs' claims for both flood and wind damage claims to their insured properties, the Defendant STATE FARM FIRE AND CASUALTY COMPANY had an incentive to charge off all losses to the Plaintiffs' properties as being the sole result of flood damage, because under such circumstances, the federal government would be required to pay the entirety of the Plaintiffs' claims, and thereby the Defendant STATE FARM FIRE AND CASUALTY COMPANY could avoid payments of compensable claims under wind coverage policies that it directly underwrote and for which it would solely be liable for payment to the Plaintiffs.

15. On information and belief, the Plaintiffs assert that at some point after the first claims arising from Hurricane Katrina were received by the

Defendant STATE FARM FIRE AND CASUALTY COMPANY, a decision was made by the Defendant STATE FARM FIRE AND CASUALTY COMPANY to misdirect and misallocate claims from Hurricane coverage (for which State Farm would be required to pay from its own reserves or assets) to flood claims that could be submitted and paid directly from the United States Treasury.

16. It is additionally asserted that, on information and belief, the Defendant STATE FARM FIRE AND CASUALTY COMPANY, after assessing the potential magnitude of its insured Katrina losses, did intentionally and deliberately set forth on a course of action designed to reduce this Defendant's exposure for losses by abandoning and disregarding its duty to fully investigate in order to make a rational and reasoned distinction between those property damages caused by wind and those damages caused by water, as well as the sequence of those catastrophic events and the proportionate damages caused by the respective catastrophic events.

17. In furtherance of its scheme or artifice to limit liability for hurricane damages set forth in Paragraphs 14 through 16 herein, the Defendant STATE FARM FIRE AND CASUALTY COMPANY adopted new claims handling procedures and protocols immediately after Hurricane Katrina that were calculated to result in, and in fact did result in, determinations that an insured's damages were either in whole or in substantial parts caused by Hurricane Katrina's storm surge,

18. In furtherance of its scheme or artifice to limit liability for hurricane

damages set forth in Paragraphs 14 through 16 herein, it is believed that the Defendant STATE FARM FIRE AND CASUALTY COMPANY did, either independent or in conjunction with those adjusters, engineers or other entities retained to investigate claims arising from Hurricane Katrina, undertake the following conduct in the investigation, adjustment and handling of its insureds' claims for damages resulting from Hurricane Katrina:

    a.    change its claims handling procedures for losses caused by storm surge;

    b.    canceled its adjusters' requests for engineer reports;

    c.    failed to timely obtain engineer reports;

    d.    replaced unfavorable engineer reports with favorable engineer reports;

    e.    ignored engineer reports and other evidence, including eyewitness testimony, that proved homes in the community were destroyed by hurricane force winds before the storm surge arrived;

    f.    required revisions" and/or "modifications, including deletions and supplementations to exclude reference to "wind damage" of unfavorable engineer reports;

    g.    directed engineers to conclude storm surge was the cause of loss in their reports, and fired and/or threatened to fire engineers who would not conform their reports to State Farm's pre-investigation direction regarding cause of loss;

   h. ignored findings in engineer reports that demonstrated coverage; adopted requirements for finding coverage that had not been utilized on pre-Katrina claims, and that were not contained within, nor supported by the subject policy of insurance; and

   i. denied coverage to policyholders, such as the Plaintiffs, who had sustained substantial wind damage before the storm surge caused injury to the insured property.

 19. On information and belief, the Defendant STATE FARM FIRE AND CASUALTY COMPANY directed its employee adjusters and its independent contractor adjusters, as well as those engineering firms and individual engineers it retained or contracted with, to show flood damage whenever and wherever there was any amount of flood damage, and to adjust the claim as a flood loss and not a wind loss, even though the primary cause of the insured's property damage was wind instead of flood waters.

 20. In furtherance of its scheme or artifice to limit liability for hurricane damages set forth in Paragraphs 14 through 19 herein, the Defendant STATE FARM FIRE AND CASUALTY COMPANY did request that the Defendant SILBEY GROUP, LTD. conduct an examination of the Plaintiffs' condominium units in order to determine whether the Plaintiffs' claims arose from wind or water damage, and the Defendants WILLIAM V. GWIN and ROBERT J. ILLO were assigned by the Defendant SILBEY GROUP, LTD. to conduct or participate in the

examination of the Plaintiffs' condominium units and the evaluation of the Plaintiffs' property damage.

21. It is alleged that the Defendants SILBEY GROUP, LTD., WILLIAM V. GWIN and ROBERT J. ILLO provided materially false information, reports and adjustments regarding the Plaintiffs' losses at the request of the Defendant STATE FARM FIRE AND CASUALTY COMPANY for the purpose of assessing that the damage to the Plaintiffs' condominiums, either in whole or substantial part, were the result of Hurricane Katrina's storm surge.

22. Based upon the review of the January 25, 2006 report of the Plaintiff's condominiums prepared by the Defendant SILBEY GROUP, LTD. at the direction of the Defendant STATE FARM FIRE AND CASUALTY COMPANY, the Defendants SILBEY GROUP, LTD., WILLIAM V. GWIN and ROBERT J. ILLO acted in a grossly or recklessly negligent manner in the examination and evaluation of the damage sustained at the Plaintiffs' condominiums,

23. In support of these allegations, it is submitted that the Defendants SILBEY GROUP, LTD., WILLIAM V. GWIN and ROBERT J. ILLO did not conduct an adequate or accurate inspection of the Plaintiffs' property and the damage thereto. Specifically, the Plaintiff's assert:

    a. the Defendant WILLIAM V. GWIN did not personally inspect the Plaintiffs' property, which resulted in a determination by this Defendant that disregarded existing objective evidence indicating substantial damage occurred prior to this property sustaining damage from the storm surge;

  b. the Defendant WILLIAM V. GWIN did not personally inspect the Plaintiffs' property, which resulted in a determination by this Defendant that based solely upon information submitted by the Defendants ROBERT J. ILLO and STATE FARM FIRE AND CASUALTY COMPANY, with the subject information being intentionally skewed to support a determination that the damage to the Plaintiffs' property was, in whole or substantial part, caused by Hurricane Katrina's storm surge;

  c. the Defendant ROBERT J. ILLO prepared supporting materials for use by the Defendant WILLIAM V. GWIN in preparation of the subject engineering report that was either intentionally skewed to support a determination that the damage to the Plaintiffs' property was, in whole or substantial part, caused by Hurricane Katrina's storm surge and/or prepared in accordance with directives from the Defendant STATE FARM FIRE AND CASUALTY COMPANY, that emphasized the occurrence of storm surge damage to exclusion of wind damage;

  d. the Defendants SILBEY GROUP, LTD., WILLIAM V. GWIN and ROBERT J. ILLO did not:

    i. adequately inspect and document damage to the interiors of either the Plaintiffs' property or the other damaged condominium units in proximity to the Plaintiffs' property;

     ii. consider objective evidence at the subject condominium complex indicating that substantial wind damage had occurred at this property prior to the occurrence of any storm surge damage;

     iii. record accurate measurements of the Plaintiffs' property;

     iv. take accurate measurements to determine the location of the buildings on or in proximity to the Plaintiffs' property;

     v. determine the elevation of the buildings on the Plaintiffs' property;

     vi. adequately utilize engineering tools to conduct the inspection;

     vii. prepare independent tests under the direction of an engineer;

     viii. prepare accurate and detailed sketches of the Plaintiffs' property;

     ix. seek to interview witnesses or any other persons having knowledge of damage to the Plaintiffs' property or the other condominium units in proximity to the Plaintiffs' property;

     x. meet with the Plaintiffs or ask them for any information concerning their damages;

     xi. conduct the engineering evaluation in a manner that complied with accepted professional standards; and/or

          xii.    investigate all relevant information and make a realistic evaluation of the damage to the Plaintiffs' property.

    24.    As evidenced by the engineering report prepared by the Defendant SILBEY GROUP, LTD. for the Defendant STATE FARM FIRE AND CASUALTY COMPANY, the Defendant WILLIAM V. GWIN, who signed the engineering report, did not perform a personal inspection of the Plaintiffs' property. Instead, the Defendants SILBEY GROUP, LTD. and WILLIAM V. GWIN had the Defendant ROBERT J. ILLO, who was not a licensed professional engineer in the State of Mississippi, to perform the inspection.

    25.    The Defendants SILBEY GROUP, LTD., WILLIAM V. GWIN and ROBERT J. ILLO were aware of the significance of their hurricane damage analysis, in that, if the engineering report determined wind damaged the Plaintiffs' property, the Plaintiffs would be entitled to payment for additional losses the Defendant STATE FARM FIRE AND CASUALTY COMPANY, and, on the contrary, if the engineering report determined flood, either in whole or in substantial part, damaged the Plaintiffs' property, the Defendant STATE FARM FIRE AND CASUALTY COMPANY would be able to deny additional payment to the Plaintiffs for dam, age to their property.

    26.    Based upon a pattern of conduct shown in regard to other State Farm engineering reports prepared by the Defendants SILBEY GROUP, LTD. and/or WILLIAM V. GWIN, the Defendant STATE FARM FIRE AND CASUALTY COMPANY specifically advised these Defendants of what it wanted the content

of conclusions in engineering reports to be, to-wit, that damage to the Plaintiff's property was to be shown as caused by storm surge.

27.    The Defendants SILBEY GROUP, LTD. and/or WILLIAM V. GWIN actively participated in the drafting of the engineering report on the Plaintiffs property, and this report was designed to coincide with the predetermined conclusions of the Defendant STATE FARM FIRE AND CASUALTY COMPANY that the property damage was caused by storm surge, and the Defendants SILBEY GROUP, LTD. and/or WILLIAM V. GWIN knew their report would be utilized to deny the Plaintiffs' claim.

28.    The Defendants SILBEY GROUP, LTD., WILLIAM V. GWIN and/or ROBERT J. ILLO failed to make their report and conclusions based on available facts and relevant information, and their conduct in failing to make a realistic evaluation of the Plaintiff's claim constitutes gross negligence, malice, or reckless disregard by these Defendants for the Plaintiff's rights.

29.    It is also alleged that the Defendant PILOT CATASTROPHE SERVICES, INC, a company that has acted as an independent contractor for the Defendant STATE FARM FIRE AND CASUALTY COMPANY in the evaluation of wind and flood claims arising from Hurricane Katrina, was retained by the Defendant STATE FARM FIRE AND CASUALTY COMPANY in order to determine whether the Plaintiffs' claims arose from wind or water damage, or to otherwise minimize the wind damage sustained at the Plaintiffs' properties, and that the failure of the Defendant PILOT CATASTROPHE SERVICES, INC. to

investigate all relevant information and must make a realistic evaluation of the Plaintiff's claim constitutes gross negligence, malice, or reckless disregard by this Defendant for the Plaintiff's rights.

30. In the course of stiffing the burden of payment of these hurricane claims to the federal government, it is believed that the Defendant STATE FARM FIRE AND CASUALTY COMPANY instructed its employee adjusters and independent contractor adjusters to pay the policy limits when adjusting flood damage claims.

31. Specifically, it is believed that the adjusters of the Defendant STATE FARM FIRE AND CASUALTY COMPANY were told that if they initially analyzed a claim and found that the insured has less damage under the flood coverage than policy limits allowed, the adjuster was told to review the claim a second time to ensure that the flood claim was paid at policy limits.

33. The Plaintiffs assert the matters alleged herein constitute a calculated pattern of bad faith conduct and deceptive business practices by the Defendants STATE FARM FIRE AND CASUALTY COMPANY, SILBEY GROUP, LTD., WILLIAM V. GWIN, ROBERT J. ILLO and PILOT CATASTROPHE SERVICES, INC., and as such, these Defendants should be held jointly and severally liable for all damages or losses incurred by the Plaintiffs in the adjustment of their insurance claims.

34. The Plaintiffs further assert that the Defendant STATE FARM FIRE AND CASUALTY COMPANY's subsequent determination that there was no or

minimal wind damage to their three (3) townhouses referenced herein was erroneous, as the Defendant STATE FARM FIRE AND CASUALTY COMPANY re-evaluated the claims of an adjoining townhouse owner (Mary Hargrove) and determined that the townhouses in this complex sustained substantial wind damage before the flood waters rose.

35.   The Defendant STATE FARM FIRE AND CASUALTY COMPANY has paid the Plaintiffs the following sums under the foregoing claims and insurance policies covering losses from wind damage:

| | | |
|---|---|---|
| a. | Structure damage (4/11/2006) | $6774.85 |
| b. | Loss of rent (1/27/2006) | $12,845 |
| c. | Loss of rent (3/9/2006) | $2569 |

36.   The Defendant STATE FARM FIRE AND CASUALTY COMPANY has paid what is believed to be the policy limits under the subject flood policy for structural damage to damage to the three (3) townhouses, but the Defendant has failed to pay the Plaintiff for all compensable claims under the flood policies.

37.   By failing to pay the Plaintiffs' compensable claims for damage and losses under the foregoing claims and insurance policies, the Defendant STATE FARM FIRE AND CASUALTY COMPANY did breach its insurance contracts with the Plaintiffs hereby making demand for all damages resulting from the Defendant STATE FARM FIRE AND CASUALTY COMPANY's breach of the afore-referenced insurance contract through its failure to pay the Plaintiffs' compensable claims.

38. The Plaintiffs further show that the Defendant STATE FARM FIRE AND CASUALTY COMPANY, in addition to its refusal to promptly pay and compensate the Plaintiffs for their compensable losses, has engaged in deliberate course of action that was calculated to gain financial advantage for the Defendant through the delay of the adjudication of the Plaintiffs' claim and the imposition upon the Plaintiffs of unnecessary delays and financial hardship, and because of the Defendant STATE FARM FIRE AND CASUALTY COMPANY's refusal to pay these claims in disregard of its own findings that the wind damage to the subject townhouses was extensive, and further considering that the Defendant STATE FARM FIRE AND CASUALTY COMPANY has deliberately taken action that would delay the adjudication of the Plaintiffs' compensable claims, the Plaintiffs' allege that the Defendant STATE FARM FIRE AND CASUALTY COMPANY has engaged in an ongoing pattern, in both this instance and others, of bad faith conduct and practices in the adjustment of claims arising from Hurricane Katrina, for which the Plaintiffs make demand for both actual and punitive damages.

39. Specifically, the Plaintiffs would show that the Defendant STATE FARM FIRE AND CASUALTY COMPANY, through the findings and determinations of its own adjusters, had determined that an adjoining townhouse owner, to-wit, Mary Hargrove, had sustained substantial wind damage in additional to flood damages, and for such wind damage, the Defendant voluntarily paid Ms. Hargrove substantial compensation.

40. The Plaintiffs would additionally show that prior to filing of this cause in the Jackson County (Mississippi) Court, they had made a deliberate decision to limit the amount of their claims against the Defendant STATE FARM FIRE AND CASUALTY COMPANY in order to obtain a prompt trial in state court, in which the court's docket is substantially less crowded than the docket of this Court, which has delayed the Plaintiffs' ability to obtain a trial date by at less one (1) year, and that the decision by the Defendant to remove this cause from state court was not based upon objective beliefs that the Defendant STATE FARM FIRE AND CASUALTY COMPANY would be prejudiced by trial in state court, but the decision to remove was a calculated decision made in an effort to impose further delays and hardships upon the Plaintiffs in order to obtain financial gain and other impermissible advantages for the Defendant.

41. As compensation for their claims of bad faith by the Defendants STATE FARM FIRE AND CASUALTY COMPANY, E SILBEY GROUP, LTD., WILLIAM V. GWIN, ROBERT J. ILLO and PILOT CATASTROPHE SERVICES, INC., as well as those John Doe defendants whose identities are currently unknown, in the adjustment of their claims at issue herein, the Plaintiffs seek applicable actual and punitive damages, attorneys fees to the extent compensable under applicable law, pre-judgment interests on the specific sums that represent compensable unpaid claims under the policies at issue herein, and such other losses that may be the proximate result of the bad faith conduct and practices of the Defendant in the adjustment of the Plaintiffs' claims.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs make claim against the Defendant STATE FARM FIRE AND CASUALTY COMPANY for its breach of contract due to its failure to pay all compensable wind or related damages, loss of rents, and any other unpaid losses sustained to his properties as described herein and adjusted by the Defendant Policies 24-RC-2339-5, 24-RC-2340-7, 24-RC-2341-9, 99-CR-5108 or 99-CE-5131, plus pre-judgment interest on all unpaid claims from the date of loss.

The Plaintiffs further seek actual and punitive damages for those losses and damages that may be the proximate result of the bad faith conduct and practices of the Defendants STATE FARM FIRE AND CASUALTY COMPANY, SILBEY GROUP, LTD., WILLIAM V. GWIN, ROBERT J. ILLO and PILOT CATASTROPHE SERVICES, INC., as well as those John Doe defendants whose identities are currently unknown in the adjustment of their claims at issue in this Cause.

This the 19th day of November, 2009.

/s/ *Blewett William Thomas*
BLEWETT W. THOMAS

Blewett William Thomas
MSB #8116
PO Box 7706
Gulfport, MS 39506
(228) 863-4800